IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARY BOWLES, et al.,

                 Plaintiffs,

v.                                          CIVIL ACTION NO.  2:12-cv-05997

MASSEY ENERGY COMPANY, et al.,

                 Defendants.

**MEMORANDUM OPINION AND REMAND ORDER**

Pending before the Court are Third-Party Plaintiffs Patriot Coal Corporation, Heritage Coal Company LLC, and Pine Ridge Coal Company, LLC's motion for abstention and remand [Docket 8] and Plaintiff Mary Bowles's motion to define the scope of removal [Docket 6]. For the reasons that follow, the Court **GRANTS** the motion for abstention and remand and **DENIES AS MOOT** the motion to define the scope of removal.

*I.*       *FACTUAL AND PROCEDURAL BACKGROUND*

On September 3, 2009, the Circuit Court of Boone County, West Virginia ("Circuit Court") consolidated 108 separate claims against several coal mining entities under an action styled *Mary Bowles, et al. v. Massey Energy Company, et al.*, Civil Action No. 09-C-212 (hereinafter "the Underlying Claims").  Patriot Coal Corporation, Heritage Coal Company LLC, and Pine Ridge Coal Company, LLC (collectively "Patriot") were among several Defendants named in that action whose coal mining operations allegedly caused personal injury and property

1

damage to the various Plaintiffs.  On December 10, 2009, Patriot filed a third-party complaint against its various primary and excess comprehensive general liability insurance carriers seeking a declaration under the West Virginia Uniform Declaratory Judgment Act that its insurers had a duty to defend and indemnify Patriot against the Underlying Claims. (Docket 1-2 at ¶ 1; Docket 8 at ¶ 2.)  Patriot's third-party complaint also asserted a breach of contract claim against some of the named third-party defendant insurers. (Docket 1-2 at ¶¶ 89-94.)

The Underlying Claims were settled on June 25, 2010 and dismissed by the Circuit Court. Patriot also settled and dismissed its third-party claims against two primary and two excess insurers at that time.   On December 6, 2011, the Circuit Court granted Patriot's motion for partial summary judgment on its duty to defend claim against third-party defendant insurers Century Indemnity Company, Indemnity Insurance Company of North America, Pacific Employers Insurance Company, and Ace American Insurance Company (collectively "Ace"). Patriot's indemnification and breach of contract claims remain unresolved.

On July 9, 2012, Patriot and "substantially all" of its wholly owned subsidiaries filed a voluntary Chapter 11 petition for bankruptcy in the Southern District of New York.   On September 21, 2012, the Circuit Court dismissed Patriot's third-party claims against all remaining third-party defendant excess insurers, leaving Ace as the only remaining third-party defendant. Ace removed Patriot's third-party claims and its counter-claims against Patriot to this Court on September 28, 2012 pursuant to 28 U.S.C. § 1452(a).  Patriot moved to remand on October 12, 2012, citing 28 U.S.C. §§ 1334(c) and 1452(b).  Patriot argues that the requirements for mandatory abstention are met and obligate the Court to remand this action to state court.  In the

alternative, Patriot contends that this Court should exercise its discretion to abstain under § 1334(c)(1).

## II.    LEGAL STANDARDS

Resolution of a motion for abstention and remand requires a two-part analysis.  First, the federal court must determine whether bankruptcy jurisdiction exists.  *See Loudin v. J.P. Morgan Trust Co., N.A.*, 481 B.R. 388, 391-92 (S.D. W. Va. 2012).  This inquiry focuses on 28 U.S.C. §§ 1334(a)-(b) and 1452(a).  *Id.*  Title 28 U.S.C. § 1452(a) permits removal of "any claim or cause of action in a civil action . . . if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  Section 1334(b) grants district courts "original but not exclusive jurisdiction [over] all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Together, these provisions allow a claim to be removed from state to federal court if the claim arises under title 11, arises in a case under title 11, or is related to a case under title 11.  28 U.S.C. § 1334.

Second, if jurisdiction exists, the next query is whether the federal court is obligated to abstain from hearing the action under 28 U.S.C. § 1334(c)(2).  Section 1334(c)(2) requires abstention if the claims before the court are sufficiently attenuated to the bankruptcy proceeding and the state court's resolution of the matter will not adversely affect the bankruptcy proceeding.  *See Barge v. W. S. Life Ins. Co.*, 307 B.R. 541, 544 (S.D. W. Va. 2004).  Specifically, the mandatory abstention provision states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action

is commenced, and can be timely adjudicated, in a State forum of
appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  Even where mandatory abstention does not apply, the federal court may

nevertheless exercise its discretion to abstain under § 1334(c)(1). *See id.* § 1334(c)(1) ("[N]othing

in this section prevents a district court in the interest of justice, or in the interest of comity with

State courts or respect for State law, from abstaining from hearing a particular proceeding arising

under title 11 or arising in or related to a case under title 11.").

### III.    LEGAL ANALYSIS

   *A.    Jurisdiction*

Ace filed its notice of removal under 28 U.S.C. § 1452(a), stating that this Court has

jurisdiction over Patriot's third-party causes of action because they are related to its Title 11

bankruptcy proceeding. (Docket 1 ¶ 6.)    Ace further argues that this Court has exclusive

jurisdiction over the insurance policies at issue because they are property of the bankruptcy estate.

(*Id.* ¶ 7 (citing 28 U.S.C. § 1334(e)(1)).  Patriot does not contest whether removal was initially

appropriate; instead, it argues for mandatory abstention under 28 U.S.C. § 1334(c)(2), which is

premised on the Court's finding that it has jurisdiction yet must decline to exercise it.

The Court finds that Patriot's causes of action are related to its bankruptcy case and that, as

an initial matter, Ace's removal was proper.  The Fourth Circuit has held that an action is related

to a bankruptcy case "if the outcome of the proceeding could alter the debtor's rights, liabilities,

options, or freedom of action (either positively or negatively) and the proceeding in any way

impacts upon the handling and administration of the bankrupt estate." *New Horizon of NY LLC v.*

*Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308

n. 6 (1995)); *see also Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other*

*grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124-25 (1995) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.") (citations omitted).

Resolution of Patriot's duty to defend, indemnification, and breach of contract claims could potentially augment the assets of the bankruptcy estate, or, conversely, limit the assets available for distribution to Patriot's creditors.   In this manner, the extent of Patriot's insurance coverage will surely impact Patriot's liabilities and could influence its reorganization plan.   The Court has "related to" jurisdiction over Patriot's third-party claims.   *See Wheeling-Pittsburgh Corp. v. Am. Ins. Co.*, 267 B.R. 535, 539 (N.D. W. Va. 2001)   (finding debtors' action against their insurers was "related to a Title 11 case, in that the outcome could affect the amount of funds available to those to whom plaintiffs may be liable.").

B.      *Mandatory Abstention*

Though § 1334(b) grants the Court broad jurisdiction over actions related to a bankruptcy proceeding, this jurisdictional grant is circumscribed by the mandatory abstention provision located in § 1334(c)(2).   Based on this statute, a district court *must* abstain if: 1) a timely motion for abstention is made, 2) the proceeding is based upon a state law cause of action, 3) the proceeding is related to a title 11 bankruptcy proceeding but is not a "core" proceeding, 4) the action lacks a federal jurisdictional basis absent the bankruptcy, and 5) an action has been commenced, and can be timely adjudicated, in state court. *See Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006) (discussing requirements); *In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996) (same).

The Court addresses these requirements below.  Because the Court ultimately finds that mandatory abstention applies, it will not address whether permissive abstention under § 1334(c)(1) is also warranted.

   *1.*  *Patriot's Motion Was Timely*

Of the five mandatory abstention requirements, Ace concedes the first: it admits that Patriot timely filed its motion to remand.  The Court agrees. Patriot filed its motion to remand two weeks after Ace filed its notice of removal.  The Court finds Patriot's motion was timely and that the first mandatory abstention requirement is met.

   *2.*  *Patriot's Claims Arise Exclusively from State Law*

As to the second requirement, Ace initially contends that Patriot fails to demonstrate that this proceeding is based upon state law causes of action.  While Ace recognizes that Counts I and II of Patriot's third-party complaint arise under the West Virginia Uniform Declaratory Judgment Act, Ace implies that these counts are not truly state law claims because they "just as easily" could have been brought under the federal Declaratory Judgment Act.  Similarly, Ace argues that federal courts "routinely adjudicate breach of contract actions"—apparently implying that Patriot's common law breach of contract claims are not uniquely state law claims.  Ace concludes this discussion by reversing its original assertion and claiming that while the third-party complaint may technically be based upon state law causes of action, "this factor is just barely satisfied." (Docket 11 at 9.)

Ace's arguments are disingenuous at best.  The second factor for mandatory abstention merely requires that Patriot's claims to be based upon state law.  It is entirely irrelevant whether federal courts routinely adjudicate the types of claims at issue or even whether the claims have

some overlap with federal causes of action.  *See, e.g.*, *Wheeling-Pittsburgh Corp.*, 267 B.R. at 538-39 (finding mandatory abstention was warranted where the plaintiff's complaint sought declaratory relief under West Virginia law).  Federal law is in no way implicated by Patriot's third-party complaint.  Far from being "just barely satisfied", the second requirement for mandatory abstention is entirely satisfied because Patriot's claims arise exclusively from state law.

> 3.    *Patriot's Claims are Non-Core*

The parties dispute whether the third requirement is met.  Mandatory abstention is required where the claims before the court are non-core under the Bankruptcy Code.  "Mandatory abstention applies only to non-core proceedings—that is, proceedings 'related to a case under title 11,' but not 'arising under title 11, or arising in a case under title 11.' " *In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996) (citing 28 U.S.C. §§ 157(b)(1) & 1334(c)(2)); *see also In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002) ("Abstention is only mandated with respect to non-core matters.") (internal citations omitted).  Thus, if Patriot's claims are merely "related to" its bankruptcy case, as opposed to "arising under title 11" or "in a case under title 11", mandatory abstention is required.

"Arising under" proceedings are those which "involve a cause of action created or determined by a statutory provision of title 11." *Matter of Wood*, 825 F.2d 90, 96 (5th Cir.1987)); *see also Barge*, 307 B.R. at 544 (referencing, as examples of core proceedings that arise under Title 11, exemption claims under § 522 or avoidance actions under § 544(b)); *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997) (same).  The Fourth Circuit has defined proceedings "arising in" Title 11 as those that "are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the

7

bankruptcy." *In re A.H. Robins Co., Inc.*, 86 F.3d 364, 372 (4th Cir. 1996) (citing *Matter of Wood*, 825 F.2d at 97); *see also In re Repository Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010) (defining "arising in" proceedings as those "administrative matters that arise *only* in bankruptcy cases") (internal citations omitted); *In re Midgard Corp.*, 204 B.R. at 770 n. 6 (noting that "[p]roceedings 'arising in' a bankruptcy case are those that could not exist outside of a bankruptcy case."). While "arising under" and "arising in" proceedings are "core", matters that are merely "related to" a bankruptcy proceeding are not.

The distinction is significant. "In the wake of [the United State Supreme Court's decision in] *Northern Pipeline*, Congress enacted the core/non-core distinction to try and remedy the defects in the bankruptcy system." *Humbuldt Express Inc. v. The Wise Co., Inc. (In re Apex Express Corp.)*, 190 F.3d 624, 631 (4th Cir. 1999) (citing *Northern Pipeline Contstr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)). The plurality opinion in *Northern Pipeline* held that the Bankruptcy Act of 1978 impermissibly allowed bankruptcy courts to hear claims based on state-created private rights that arose independent from the bankruptcy proceeding. *Northern Pipeline*, 458 U.S. at 70. Congress amended the Bankruptcy Code in response to this decision to more fully delineate what matters constitute "core" proceedings—and thus proceedings over which the bankruptcy court may enter final judgment—and which matters are "non-core". A non-exhaustive list of what constitutes a core proceeding is now set forth in 28 U.S.C. § 157(b).[1] The

---

[1] Under § 157(b)(2), "[c]ore proceedings include, but are not limited to:
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

Fourth Circuit has cautioned against an expansive reading of this statutory text in a way that undermines the *Northern Pipeline* decision. *In re Apex Express Corp.*, 190 F.3d at 631.

The parties agree that Patriot's claims do not fall within the enumerations of § 157(b). The analysis of whether Patriot's claims are core, however, does not end there. Since Patriot's claims do not fall within § 157(b)'s illustrative list of proceedings that may be considered "core", the Court must examine whether this proceeding is one that "invokes a substantive right provided by title 11 or . . . that, by its nature, could arise only in the context of a bankruptcy case." *Barge*, 307 B.R. at 544 (S.D. W. Va. 2004) (citing *Matter of Wood*, 825 F.2d at 97).

Patriot's third-party causes of action for declaratory relief and breach of contract arise under West Virginia statutory and common law, and do not invoke substantive rights provided by Title 11. This proceeding also need not have arisen in a Chapter 11 case. This much is obvious by the fact that Patriot's claims were litigated in state court for years before Patriot's Chapter 11 filing. The Court's determination of whether Patriot's claims are core, however, cannot be made

---

(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11."

"solely on the basis that [their] resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

Rather, it is the nature of this proceeding that compels that conclusion that Patriot's claims are

non-core.  *See Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165,

169 (1st Cir. 1987).

Patriot's claims request a declaration of rights under insurance contracts that were entered

into prior to the filing of the bankruptcy petition.  Ace's alleged breach of those contracts took

place pre-petition as well.  By their nature, pre-petition contractual disputes commonly do not

invoke substantive rights provided by Title 11 and are frequently distinguished from claims that

arise post-petition for this reason.  *See Consolidated SWINC Estate v. Ace USA, Inc. (In re Stone*

*v. Webster, Inc.)*, 367 B.R. 523, 526 (Bankr. D. Del. 2007) ("The Supreme Court in *Northern*

*Pipeline* ruled that Article I bankruptcy courts are constitutionally restricted when it comes to the

adjudication of pre-petition state law claims.") (internal citations omitted); *Ben Cooper, Inc. v. Ins.*

*Co. of the State of Pa. (In re Ben Cooper Inc.)*, 896 F.2d 1394, 1399 (2d Cir. 1990), *vacated and*

*remanded on other grounds*, 498 U.S. 964 (1990), *reinstated at* 924 F.2d 36 (2d Cir. 1991);  *In re*

*Arnold Print Works*, 815 F.2d at 168 ("A party who contracts with an apparently healthy

company—a company that has not filed a petition in bankruptcy—may find it unpleasantly

surprising to have to defend its *pre*–petition contract in a bankruptcy court, without a jury or

Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition

contract action before a bankruptcy court.").   Indeed, *Northern Pipeline's* analysis turned on the

distinction that the rights at issue arose "antecedent to the reorganization petition."  458 U.S. at 84.

Patriot relies on *Wheeling-Pittsburgh Corp.*, 267 B.R. 535 (N.D. W. Va. 2001), a case

which adopted the traditional reasoning that pre-petition claims under an insurance contract are

10

non-core.  *Wheeling-Pittsburgh* addressed a motion for mandatory abstention that arose in practically identical circumstances.  In that case, the plaintiffs had filed suit in state court against various insurance companies under the West Virginia Declaratory Judgment Act, seeking a declaration that the defendant insurers had a duty to defend and indemnify the plaintiffs for environmental liabilities.  *Id.* at 537.   Approximately seven years after the original filing, the plaintiffs filed voluntary petitions for Chapter 11 bankruptcy.  The defendant insurer removed the unresolved state claims to federal court, claiming that the plaintiffs' causes of action were related to the bankruptcy proceeding and that the insurance policies at issue were property of the bankruptcy estate.  Upon the plaintiffs' motion for abstention and remand, the district court held that mandatory abstention was required because, among other things, the plaintiffs' pre-petition claims were non-core.  *Id.* at 539.

Ace does not attempt to distinguish *Wheeling-Pittsburgh Corp.*  Instead, it advocates for an expansive interpretation of "core proceeding".  Without referencing the traditional definitions of "arising under" and "arising in", Ace cites a number of cases where courts have found that pre-petition proceedings to determine insurance coverage are core.[2]   Of these, Ace chiefly relies on *Matter of Celotex Corp.*, 152 B.R. 667 (Bankr. M.D. Fla. 1993), and *United States Lines, Inc. v.*

---

[2]  Ace cites *Koken v. Reliance Group Holdings, Inc. (In re Reliance Group Holdings, Inc.)*, 273 B.R. 374, 393 (Bankr. E.D.Pa. 2002) for the proposition that "a determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction[.]"  This case does not involve a determination of what is property of the estate.  There is no question that the insurance policies are Patriot's property, and no one is trying to take that property away.  *See Matter of U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997).   The issue here is of the scope of Patriot's insurance policies, "an issue of contractual interpretation, not their ownership."  *Id.*  Any suggestion that this proceeding is core because it involves a determination of whether the policies are property of the estate is misplaced.  Further, as discussed below, the question of whether a proceeding is core does not turn on whether its resolution could conceivably augment the property of the estate.

11

*American Steamship Owners Mutual Protection and Indemnity Ass'n, Inc. (In re United States Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999). The Court finds neither case persuasive. By Ace's own admission, the determination of whether a proceeding is "core" is a fact-specific inquiry. The *Celotex* and *United States Lines* decisions were both premised on factual scenarios that are not present here.

In *Celotex*, a Chapter 11 debtor brought an adversary proceeding against its insurers seeking a declaration that the insurers owed a duty to indemnify and defend the debtor against asbestos-related property damage and tort claims. *Id.* at 670. The bankruptcy court held that the pre-petition insurance policies at issue were considered core because these policies were the "linchpin" of the reorganization effort. *Id.* at 676. In so holding, the court emphasized that the debtor's reorganization was to be funded largely through the proceeds of the insurance policies at issue and that therefore "[t]he insurance coverage issue [was] the first obstacle which must be surmounted in order to bring the plan to confirmation." *Id.* The conclusion that the proceedings were core was further bolstered by the fact that the majority of the debtor's claimants were direct beneficiaries of the policies and their proceeds. *Id.* at 675.

*United States Lines* held that claims for declaration of coverage under pre-petition insurance contracts were core when the resolution of the claims had a "direct impact on the core administrative functions of the bankruptcy court." 197 F.3d at 638. The case addressed a debtor's request for a declaratory judgment establishing that asbestos-related claims against the debtor were within the coverage of certain pre-petition insurance policies issued to the debtor by the defendant insurers. *Id.* at 635. In determining whether the debtor's claims were core, the Second Circuit evaluated whether "(1) the type of proceeding is unique to or uniquely affected by the bankruptcy

proceedings, or (2) the proceedings directly affect a core bankruptcy function." *Id.* at 637.

The Second Circuit initially noted that contracts formed pre-petition generally militate against a finding of core jurisdiction. *Id.* at 637-38. Nonetheless, it found the debtor's claims were core in light of two specific facts. First, the insurance proceeds represented the only potential source of cash available to the group of personal injury claimants. *Id.* at 638. Second, the policies had a pay-first provision that required the trustee to pay the claimants and then seek indemnification. *Id.* If the trustee paid the asbestos claimants without knowing whether their claims were covered under the insurance policies, the estate's assets would not be equitably distributed. *Id.* at 639. The manner in which the declaratory proceedings "directly affected the bankruptcy court's core administrative function of asset allocation among creditors" rendered the proceedings core. *Id.*

Even if *United States Lines* were controlling precedent, Ace has not demonstrated that the proceedings at issue in this case would similarly affect a core bankruptcy function. Ace notes that fifty-five other litigation claims are pending or threatened against Patriot, and that "inevitably at least some of these . . . will be competing with the Bowles Plaintiffs to satisfy their claims from proceeds of the policies." (Docket 11 at 6-7.) The assertion that various claimants may be competing for insurance proceeds, however, is insufficient evidence that these proceedings invoke a substantive right under the Bankruptcy Code or that the insurance policies are somehow integral to successful reorganization.

The Fourth Circuit has specifically declined to treat pre-petition contract claims as core merely because they "are in some sense the property of the bankruptcy estate and because the outcome of the claim[s] will affect the bankruptcy estate (by altering its size)[.]" *In re Apex*

*Express Corp.*, 190 F.3d at 632; *see also Beard v. Braunstein*, 914 F.2d 434 (3d Cir. 1990) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core."). A lawsuit requesting a declaration of rights under a pre-petition contract is also, without specific facts to the contrary, non-core. *See also G-I Holdings, Inc. v. Hartford Accident and Indem. Co. (In re G-I Holdings, Inc.)*, 278 B.R. 376, 382 (Bankr. D.N.J. 2002); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1239 n.19 (3d Cir. 1994) ("A debtor corporation's state law breach of contract action . . . is precisely the type of proceeding that is non-core and outside the power of the bankruptcy court to adjudicate."); *Matter of United States Brass Corp.*, 110 F.3d at 1268 ("[The debtor's] claimed right to insurance coverage is a creation of state contract law and one that could be vindicated in an ordinary breach of contract suit if [debtor] were not a bankrupt. The fact that it is an *important* right to the bankrupt-[the debtor] claims to be seeking $500 million in insurance coverage-is irrelevant."); *United States Lines, Inc.*, 197 F.3d at 638 (reasoning that without evidence that the insurance policies at issue were an integral part of successful reorganization, the fact that the policies will augment the assets of the estate has an insufficient effect on the administration of the estate to render the proceeding core); *Nat'l Century Fin. Enters. v. Gulf Ins. Co. (In re Nat'l Century Fin. Enters.)*, 312 B.R. 344, 355 (Bankr. S.D. Ohio 2004) (finding that an adversary proceeding requesting a declaration of rights in pre-petition insurance contracts was non-core).

Based on this precedent and in light of the nature of this proceeding, the Court finds that Patriot's pre-petition declaratory judgment and breach of contract claims are non-core under 28 U.S.C. § 157(b)(2). Accordingly, the third requirement for mandatory abstention is met.

14

### 4. This Court has Jurisdiction Only Under § 1334

Section 1334(c)(2) next provides that, in order for mandatory abstention to apply, the action must be one that could not have been commenced in federal court absent the jurisdictional grant in § 1334. While the parties agree that this Court does not have federal question jurisdiction over Patriot's claims, they dispute whether this action could have been commenced in this Court under 28 U.S.C. § 1332 on the basis of diversity jurisdiction.

This much the parties concede: at the time Patriot brought its third-party complaint, the parties to that action were non-diverse. Patriot settled its claims against its non-diverse insurers, however, in 2010. Ace argues that this action became removable at that point and that the Court therefore has diversity jurisdiction over the claims arising from Patriot's third-party complaint. Patriot agrees that the third-party plaintiffs to this action are now completely diverse from the third-party defendants. However, it raises two challenges to Ace's diversity argument. First, according to Patriot's reading of § 1334(c)(2), the Court's alternative jurisdictional basis must have existed at the time this action commenced in state court. Alternatively, Patriot contends that Ace's argument in favor of diversity jurisdiction is foreclosed by the one-year time limit for removal of diversity actions under 28 U.S.C. § 1446(b). Patriot's first argument is unavailing, but its second is persuasive.

Section 1334(c)(2) provides that mandatory abstention applies to an action which "could not have been commenced in a court of the United States absent jurisdiction under [the bankruptcy statutes]." Patriot reasons that under this statute, the only relevant inquiry is whether diversity jurisdiction was available at the commencement of the state court case. The case Patriot cites in support of this argument is inapposite. *See Titus v. Smith*, No. 3:12-cv-21, 2012 WL 2255498

(N.D. W. Va. June 15, 2012).

    *Titus* held that mandatory abstention does not apply when a plaintiff could have initiated his lawsuit in federal court, regardless whether the action was later removable.  *Id.* at *5.  In that case, the debtor, a resident of Virginia, filed suit against a West Virginia resident in West Virginia state court.  *Id.* at *2.  After learning of the debtor's bankruptcy petition, the defendant removed the state court action pursuant to the bankruptcy removal statutes.  *Id.*  The debtor moved for abstention. *Id.* at *3.  Though he disputed "neither that complete diversity exist[ed] nor that the requisite amount [was] in controversy", the debtor argued that under the forum defendant rule, the defendant's West Virginia residency precluded removal based on diversity jurisdiction.  *Id.* at *5.

    Judge Groh reasoned that the debtor's focus on whether the action could have been removed was misplaced.  *Id.*  "Abstention is mandatory only when the action could not have been *commenced* in federal court on any jurisdictional basis other than the bankruptcy removal statutes. . . . The availability of diversity jurisdiction *at the commencement of the case* is enough to prevent application of the mandatory abstention provision found in § 1334(c)(2)." *Id.*  (citing *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 265 (M.D.N.C. 2001)).  Because diversity jurisdiction was available to the debtor at the commencement of the case, mandatory abstention did not apply.  *Id.*

    Patriot now construes *Titus* as holding that the *unavailability* of diversity jurisdiction at the commencement of the case is enough to preclude diversity jurisdiction at any other point in the litigation.  This construction turns *Titus's* reasoning on its head.  *Titus* says nothing about whether mandatory abstention applies to a proceeding, such as this one, where the parties become completely diverse *after* the commencement of the action.  Without any further support for Patriot's assertion, the Court cannot adopt its logic.

Even if the parties became diverse after the commencement of this action, however, this Court did not have diversity jurisdiction at the time of removal.  Title 28 U.S.C. § 1446(b) (1996)[3] provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Section 1446(b) is an "absolute bar" to removal of diversity-based cases more than one year after a case has commenced.  *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997); *Snyder v. Bannan*, No. 5:11-cv-19, 2011 WL 1322317 at *1 (N.D. W. Va. April 6, 2011) (citing *Lovern*, 121 F.3d at 163).  "An 'absolute bar' to removal is necessarily 'inflexible.'" *Snyder*, 2011 WL 1322317 at *1 (quoting *Lexington Market, Inc. v. Desman Assoc.*, 598 F. Supp.2d 707, 712 (D.Md. 2009)).

Ace removed Patriot's action almost three years after the commencement of this third-party action, citing only § 1334 as the basis for this Court's jurisdiction.  Had Ace actually sought to remove this proceeding on diversity grounds, its notice would have been woefully inadequate. *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 58 (S.D.N.Y. 2011) (finding § 1334 was the sole basis for federal jurisdiction where the case was removed more than one year after commencement

---

[3] The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 1, 125 Stat. 758 (2011) (the "2011 Act") amended several provisions of Title 28, including § 1446. Under the current version of § 1446, which became effective on January 8, 2012, there is an exception to the one-year bar to removal in cases where a district court determines that the plaintiff acted in bad faith to prevent a defendant from removing the case.  *See* 28 U.S.C. § 1446(c)(1). Section 105 of the 2011 Act expressly states that the amendment "shall apply to any action or prosecution commenced on or after" the effective date of the amendments. Because this case commenced in 2009, the 1996 version of § 1446 governs this analysis.

of the action).  The one-year limitation on removal of diversity cases plainly precludes diversity jurisdiction in this Court.  Accordingly, the Court finds that this action could not have been commenced in federal court absent jurisdiction under § 1334 and that the fifth requirement for mandatory abstention is satisfied.

        *5.*      *This Action Has Commenced and Can be Timely Adjudicated in State Court*

      Finally, this Court must address whether this action has been commenced and is capable of prompt adjudication by the Circuit Court of Boone County.   It is uncontested that Patriot's third-party complaint was commenced in a state forum of appropriate jurisdiction and therefore, this requirement has been met.  Ace disputes, however, that the state court is capable of timely adjudicating this matter.  As stated above, this matter has been pending in state court for approximately three years.  By pointing to statistics demonstrating that West Virginia state courts are generally busy, Ace argues that this requirement for mandatory abstention is not met.

      In determining whether allowing a case to proceed in state court will adversely affect the administration of the bankruptcy proceeding, courts look to a number of factors, including:

> (1) the backlog of the state court and federal court calendars; (2) the status of the proceeding in state court prior to being removed; (3) the status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or a liquidation case.

*In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 878 (Bankr. M.D.N.C. 2011); *In re Midgard Corp.*, 204 B.R. 764.

      Ace urges this Court to apply a presumption that the state court is incapable of timely adjudicating this dispute and that Patriot must come forward with specific evidence to the contrary.  While Ace cites the Tenth Circuit in support of this proposition, there is no Fourth

Circuit precedent addressing which party bears the burden of proving whether or not timely adjudication is possible in state court.   Lower courts within the Fourth Circuit have addressed the issue with varying results.  *See, e.g.*, *Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011) (placing the burden of proving timely adjudication in state court on the party seeking abstention); *but see Power Plant Entm't Casino Resort Indiana, LLC v. Mangano*, No. 11-00336-NVA, 2012 WL 4467543, *7 (Bankr. D.Md. September 26, 2012); *Cline v. Quicken Loans, Inc.*, No. 5:11-cv-63, 2011 WL 2633085, *6 (N.D. W. Va. July 5, 2011) (finding, where no evidence had been presented on the issue, that the state court was presumably capable of managing its docket in a timely fashion).

As the court noted in *Mangano*, placing the "timely adjudication" burden on the party seeking abstention "may [ ] be inconsistent with the mandatory nature of abstention under § 1334(c)(2) as well as the principles of comity, which presume that a state court will operate efficiently and effectively." 2012 WL 4467543 at *6 (citing *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 582 (2d Cir. 2011) (internal citation omitted)).  *Mangano* reasoned that the burden on the "timely adjudication" requirement was better placed on the removing party because this party generally has the burden to prove that jurisdiction is proper in federal court.  As discussed above in Section III.A, *supra*, however, this Court has already established that it has jurisdiction over this action.  This Court therefore views the burden better placed on Patriot—the party seeking abstention.[4]   However, the Court will follow the practice of this District that the

---

[4] While Patriot cites several prior decisions from both the Northern and Southern Districts of West Virginia to argue that it should not bear the burden on this requirement, in those cases the removing party did not seriously dispute that the state court could timely adjudicate the case.  *See Loudin v. J.P. Morgan Trust Co., N.A.*, (S.D. W. Va. 2012); *Barge*, 307 B.R. at 547; *Wheeling-Pittsburgh Corp.*, 267 B.R. at 540.

party seeking abstention need not present extraneous evidence in support of this requirement.  *See*

*Loudin v. J.P. Morgan Trust Co., N.A.*, (S.D. W. Va. Sept. 5, 2012) (finding, despite a lack of

evidence presented on the issue by the party seeking abstention, that the state court was capable of

resolving the matters at issue); *Barge*, 307 B.R. at 547 (concluding that mandatory abstention

applied, *inter alia*, due to a lack of "evidence to suggest that the state court's docket is

unmanageable or that the state court will not determine such matters in a timely fashion").

Consideration of whether remand will adversely affect the bankruptcy proceeding guides

the analysis of the *Freeway Foods* factors.  Neither Ace nor Patriot offers any evidence on the

backlog of the federal court's docket.  Ace cites the most recent West Virginia Circuit Court

Judicial Workload Assessment, which indicates that civil filings rose 18.2% between 1997 and

2005, and avers that civil filings have continued to rise since 2005.  As Patriot points out,

however, evidence that West Virginia's state courts are busy hardly requires a conclusion that its

judges are incapable of adjudicating disputes in a timely fashion.  Indeed, despite Ace's

arguments, the procedural history of this case up to this point requires the Court to come to reach a

contrary conclusion.

Second, this proceeding has been pending in state court for years and substantial progress

has been made.  The Underlying Claims have all been settled, as well as several of Patriot's third-

party claims.  The Circuit Court has also ruled on Patriot's motion for summary judgment on its

duty to defend claim.   As to the third factor, little has been mentioned in the parties' briefing

concerning the status of the Chapter 11 bankruptcy.   The Court assumes that the bankruptcy

proceedings are in their nascent stages because Patriot's petition was filed only a few months ago.

Fourth, the complexity of the issues presented certainly does not mandate in favor of retained

federal jurisdiction.  As Ace reluctantly concedes, Patriot's claims present exclusively state law issues that are neither novel nor complex.  Fifth, because this Court has determined that Patriot's claims are non-core, the bankruptcy court would not have jurisdiction to enter final judgment in this proceeding at any rate.  Quite to the contrary, Patriot has not consented to the bankruptcy court entering judgment as to its non-core claims.  This factor weighs in favor of state court adjudication.

The final factor takes into account whether the bankruptcy proceeding involves reorganization or liquidation. Timeliness is of greater significance where a Chapter 11 reorganization is pending.  *See In re Midgard Corp.*, 204 B.R. at 779 (citing *World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 612 (Bankr. S.D. Ca. 1988)).   Contrary to Ace's assertion, however, this does not mean that timely adjudication is impossible in state court merely because the debtor seeks reorganization.  *See Drauschak v. VMP Holdings Ass'n, L.P. (In re Drauschak)*, 481 B.R. 330, 347-48 (Bankr. E.D. Pa. 2012) (reasoning that state court adjudication of an adversary proceeding was favorable where the Chapter 11 proceeding had only recently commenced); *Gregory Ranch v. Lyman (In re Gregory Rock House Ranch, LLC)*, 339 B.R. 249, 254 (Bankr. D.N.M. 2006); *Lemmings v. Second Chance Body Armor, Inc.*, 328 B.R. 228, 233 (N.D. Okla. 2005) (reasoning that a pending state court proceeding would not impede the progress of the debtor's reorganization because the bankruptcy case was relatively new and unlikely to be settled in the near future).

Though the Court notes a need for heightened sensitivity to the "timely adjudication" requirement because Patriot seeks reorganization under Chapter 11, it is confident that the state court will be able to adjudicate this matter at least as timely as would the federal court.  *See*

*Wheeling-Pittsburgh Corp.*, 267 B.R. at 539. Unlike a situation where a claim is brought for the first time in the context of an adversary proceeding, this action has been pending—with substantial progress made—in state court for several years. Patriot points out that a state court hearing was scheduled for October 4, 2012, approximately one week after Ace filed its Notice of Removal. Retaining jurisdiction over this action would likely result in duplication of effort. Finally, Patriot has demanded a jury trial in its third-party complaint.

After consideration of the above factors, the Court finds that this matter is capable of timely adjudication in state court and that the fifth mandatory abstention requirement is satisfied.

IV.    CONCLUSION

For the foregoing reasons, mandatory abstention applies and this Court is compelled to remand this action to state court. The Court therefore **GRANTS** Patriot's motion for abstention and remand [Docket 8], **DENIES AS MOOT** Plaintiff Mary Bowles's motion to define the scope of removal [Docket 6], and **REMANDS** this action to the Circuit Court of Boone County, West Virginia.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       December 19, 2012

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE